In the Matter of CRYSTAL HAWKINS, Appellant, v ELIZABETH BERLIN et al., Respondents. [988 NYS2d 39]—

Judgment, Supreme Court, New York County (Donna M. Mills, J.), entered November 30, 2012, denying the CPLR article 78 petition seeking, inter alia, to annul respondents' determination that petitioner is not entitled to a distribution of certain child support payments collected by respondents, and dismissing the proceeding, affirmed, without costs.

Petitioner began receiving a grant of public assistance (PA) in December 1989 and continued to receive PA until her case was closed in February 2007. Petitioner reapplied for and received PA from June 2009 until December 2011 when she was determined to be eligible for Supplemental Security Income (SSI). Petitioner's son, Michael Jackson, was added to her PA case as of the date of his birth in May 1990. At that time, respondent the New York City Human Resources Administration (HRA) obtained an assignment of petitioner's rights to child support paid on Michael's behalf (*see* Social Services Law § 158 [5]). In July 1991, HRA obtained a court order for support payments by Michael's father. In 2000, petitioner also began receiving PA on behalf of J.S., her other son, who was born that year.

In 2000, pursuant to another assignment of petitioner's rights, HRA obtained a separate court order for the payment of child support by J.S.'s father. Michael was a part of petitioner's active PA case from May 1990 to February 28, 2007 and from August 1, 2009 to October 14, 2009. J.S. was included on petitioner's PA case from the date of his birth in 2000 through February 28, 2007, from June 1, 2009 through July 31, 2009 and from November 1, 2009 through the date of the petition.

In August 2005, the Social Security Administration (SSA) determined Michael to be eligible for SSI. On September 18, 2007, HRA received from SSA a check in the amount of $1,232.50 for reimbursement of interim assistance provided on behalf of Michael for the period covering September 2005 through January 2007. On December 13, 2011, SSA reimbursed HRA for interim assistance provided for petitioner from September 2010 through December 2011.

On or about June 27, 2011, petitioner requested a first-level desk review. A desk review is "an accounting of the collections and disbursements made on behalf of a current or former recipient of public assistance (PA) who is or was receiving child support enforcement services (recipient)" (18 NYCRR 347.25 [a] [1]). In the case of a family, such as petitioner's, that has ceased receiving aid to dependent children, a desk review may be sought where it is claimed that the amount of child support collected exceeded the amount of unreimbursed past assistance (*see* 18 NYCRR 347.13 [f] [3]; 347.25 [a] [2]). Petitioner's request for a desk review pertained to an alleged cumulative excess support payment, a term defined on the request form as the "amount of payment in excess of total temporary assistance paid to you for past months." The time period identified by petitioner ran from September 2005 to August 2011. Upon reviewing all of its PA and child support records for the life of the case, HRA notified petitioner of its determination that she was owed nothing for excess payments.* As required by 18 NYCRR 347.25 (f), HRA's notice was accompanied by copies of the worksheets underlying its determination.

Through counsel, petitioner filed with respondent Office of Temporary and Disability Assistance (OTDA) a request for a second-level desk review (*see* 18 NYCRR 347.25 [g]). In requesting the second-level desk review, petitioner asserted that "any support collected [through the Child Support Management System] for Michael Jackson for the period from September

---

* HRA did determine that petitioner was entitled to a "pass-through" payment of $100 that was made pursuant to Social Services Law §§ 111-c (2) (d) and 131-a (8) (a) (v) and is not a subject of this appeal.

2005 through August 2011 should have been paid over to Crystal Hawkins since Michael Jackson was not in receipt of public assistance since January, 2007, and any public assistance provided for his needs for September 2005 through January, 2007 was reimbursed from retroactive SSI paid on his behalf in September, 2007." In the determination that is under review, OTDA confirmed HRA's first-level desk review determination on the basis of OTDA's calculation of cash assistance received under petitioner's case number in the amount of $112,588.83 for the duration of her case (Dec. 1, 1989 through Aug. 1, 2011), minus the $1,232.50 received from SSA as reimbursement of interim assistance, and minus $57,524 from assigned child support, leaving $53,832.33 in unreimbursed assistance. OTDA's notification was accompanied by copies of the relevant worksheets.

In the instant article 78 petition, petitioner alleged that HRA "was fully reimbursed for public assistance paid on behalf of Michael Jackson during the period from September, 2005 through January 2007 from Michael Jackson's retroactive SSI benefits." The requested relief includes a judgment directing respondents to distribute the child support collected or due on behalf of Michael for that period. After issue was joined, the court below dismissed the petition upon finding that OTDA's level-two desk review determination was not arbitrary and capricious. We affirm.

In this State, the receipt of public assistance is conditioned upon the assignment of an applicant's or recipient's support rights to the State and the respective social services district (see Social Services Law § 111-c [1], [2] [a]). Since December 1, 2001, petitioner's PA benefits were issued under the State's Safety Net Assistance (SNA) program (see Social Services Law § 157 et seq.). A person, such as petitioner, who applies for or receives SNA is required "to assign to the state and the social services district any rights to support that accrue during the period that a family receives safety net assistance" (Social Services Law § 158 [6] [i]). The assignment terminates with respect to current support upon a determination by the social services district that the applicant, recipient or family member for whom the applicant or recipient is applying for or receiving assistance is no longer eligible for safety net assistance, "except with respect to the amount of any unpaid support obligation that has accrued during the period that a family received safety net assistance" (Social Services Law § 158 [5]).

As set forth above, under the statutory scheme, the assignment of child support is suspended only with respect to current support. Although it could have, the legislature has chosen not

to suspend the assignment of child support with respect to child support due or collected on behalf of Michael while he and petitioner's family received benefits, which is the interpretation urged by petitioner. Omissions in a statute cannot be supplied by construction (McKinney's Cons Laws of NY, Book 1, Statutes § 363). The claims set forth in the amended petition are therefore precluded by the application of the statute.

Petitioner cites to Social Services Law § 131-c (1) for the proposition that the assignment of her right to recover child support arrears was improper with respect to Michael because his needs were excluded from petitioner's PA budget as of the time he became eligible for SSI. Petitioner misconstrues Social Services Law § 131-c (1) because its application is limited in scope to "the purposes of determining eligibility for and the amount of assistance payable." The statute has nothing to do with the assignment of petitioner's right to child support. Accordingly, there is no merit to petitioner's argument that respondents' interpretation of Social Services Law § 158 is at odds with the provisions of Social Services Law § 131-c (1).

We disagree with the concurrence/dissent's position that there is no rational basis for respondents' determination that "petitioner's assignment of child support is permanent, lasting for the duration of the family's public assistance case, even for a period of time when Michael was not a part of that household . . . ." The concurrence/dissent also posits that this matter should be remanded "for a recalculation of benefits paid for the family to exclude those periods of time after 2007." The amended petition calls for relief that is limited to a judgment "reversing the State respondent's determination of petitioner's request for a second level desk review, and directing the city agency to distribute child support collected or due on behalf of Michael Jackson for the period from September 2005 through January 2007." Therefore, petitioner has not preserved any request for the post-2007 review urged by the concurrence/dissent (*see e.g. People ex rel. Rodriguez v Warden, Rikers Is. Correctional Facility*, 61 AD3d 494 [1st Dept 2009]).

We conclude that OTDA's determination is correct for the reasons set forth above. To be sure, citing to Social Services Law §§ 158 (5) and 348 (2) and (3), petitioner has acknowledged in her brief and submissions below that the "[r]ights to child support are *permanently* assigned to the state and social services district as long as the support payments received do not exceed the total amount of assistance paid to the family as of the date the family no longer receives public assistance" (emphasis added). Here, since the total amount of PA paid to

petitioner and her family exceeded the amount of child support collected by HRA when her PA case closed in February 2007, no excess support payment was owed to petitioner (*see* 18 NYCRR 347.13 [f]; *see also Matter of Pringle v Johnson*, 158 AD2d 982 [4th Dept 1990]). Further, as provided by 18 NYCRR 347.13 (f) (3), "only amounts collected . . . which exceed the amount of unreimbursed past assistance shall be paid to the family." Accordingly, petitioner is not entitled to any child support arrears that HRA has not yet collected.

We have considered petitioner's remaining contentions and find them unavailing. Concur—Tom, J.P., Friedman and DeGrasse, JJ.

Feinman and Gische, JJ., concur in part and dissent in part in a memorandum by Gische, J., as follows: I write separately because while I agree with the majority that petitioner was not entitled to a credit for certain child support payments collected by the City Human Resources Administration (HRA) on her behalf for the period encompassing September 2005 through January 2007, I do not believe that petitioner's assignment of child support is permanent, lasting for the duration of the family's public assistance case, even for a period of time when the subject child (Michael Jackson) is not a part of that household. Thus, I would modify the agency's determination to the extent of remanding the matter back for a recalculation of benefits paid for the family to exclude those periods of time after 2007 when Michael was not statutorily considered part of petitioner's family. I would also credit petitioner for $1,588.20, which represents the monies HRA received from the Social Security Administration (SSA) on her own behalf.

Petitioner brought this CPLR article 78 petition challenging respondents' determination that she is not entitled to share in any of the outstanding child support arrears owed on behalf of her son Michael. HRA claims that because the child support owed exceeds the assistance paid to the family, petitioner is not entitled to any of the outstanding arrears, if and when they are collected. According to respondents, HRA made cash assistance payments to the family totaling $112,588.83 from the date petitioner first applied for public assistance in 1989 through August 1, 2011.

Petitioner also claims that respondents failed to properly credit her for the $1,588.20 that HRA received from SSA when she herself qualified for SSI benefits. Petitioner applied for public assistance in December 1989, and when Michael was born in May 1990, petitioner also began to receive public assistance on his behalf. Although petitioner has another, younger child born

in 2000 (J.S.), for whom she also obtained public assistance, the children have different fathers and only the child support collected or due by Michael's father is the subject of this summary proceeding.

Since 2001, petitioner has been receiving public assistance under the Safety Net Assistance Program (SNA). Pursuant to Social Services Law § 131-c (1), when an application for public assistance is made on behalf of a minor, the other minor siblings residing in the same dwelling with that minor are required to also apply "for assistance and be included in the household for purposes of determining eligibility and grant amounts, if such individuals reside in the same dwelling unit as the minor applying for assistance." With respect to budgeting, "[a]ny income of or available for such parents, brothers and sisters which is not disregarded under subdivision eight of section one hundred thirty-one-a of this article, shall be considered available to such household" (§ 131-c [1]). "The provisions of [section 131-c (1)] shall not apply to individuals who are recipients of federal supplemental security income benefits or additional state payments pursuant to [chapter 55 of the Social Services Law]" (id.). As a condition of receiving SNA, the applicant must apply for federal SSI benefits if it "reasonably appears" he or she may be qualified for such benefits (Social Services Law § 158 [2]; 18 NYCRR 370.2 [b] [5] [ii]). Social Services Law § 158 (5) provides that an application for "safety net assistance [SNA] shall operate as an assignment to the state and [HRA] of any rights to support that accrue during the period that a family receives [SNA]." It is undisputed that petitioner complied with each of these requirements, first by executing an assignment of her right to child support from Michael's father and then by applying for SSI on Michael's behalf in August 2005.

While Michael's SSI application was being processed, HRA continued to pay benefits on his behalf. Those interim assistance payments were terminated by HRA in January 2007 when Michael was approved for SSI in January 2007 with benefits retroactive to September 2005. HRA recouped the sum of $1,232.50 from Michael's initial SSI payment, as it was permitted to do under Social Services Law § 158 (5). During that same time, HRA also collected child support from Michael's father. Once Michael began receiving SSI, he was no longer eligible for public assistance (Social Services Law § 158 [2]) and his case was closed on January 19, 2007. Petitioner began receiving child support payments directly from Michael's father via income execution once Michael's case was closed and she continued collecting those payments until Michael turned 21 in May 2011. At

that time an order was entered in Family Court ending Michael's father's prospective support obligation, without prejudice to arrears. Petitioner's own public assistance case was closed in February 2007 and she later reapplied for SNA benefits in June 2009. She continued to receive SNA until the end of December 2011 when she became eligible for SSI, retroactive to September 2010.

Petitioner contends that she is entitled to the child support payments HRA collected during the period of September 2005 through January 2007 because HRA recouped its interim assistance payments from Michael's first SSI check. She characterizes this as "double dipping" because her assignment of child support terminated in September 2005 when Michael became eligible for SSI, not when his case was closed in January 2007. Since HRA is not limited or prohibited by law or regulation from enforcing petitioner's assignment of child support simply because it has also obtained reimbursement from SSA for the same period of time, I agree with the majority, that respondents' determination as to the period encompassing September 2005 through January 2007 has a rational basis and petitioner has no valid claim to the child support that HRA collected on Michael's behalf through January 2007. There was no "double dipping" by HRA in collecting monies from both sources because HRA's recoupment of monies from these independent sources did not exceed the amount of unreimbursed past public assistance. The monies HRA received from Michael's initial SSI check and his father's child support payments were properly credited towards the public assistance provided to the petitioner's family through January 2007 while Michael was still eligible for public assistance and considered a member of that household. The interim assistance that HRA provided that household included money to meet Michael's basic needs and those needs were factored into the budget for its members during that time (18 NYCRR 353.2 [a] [1] [i]).

The situation is different, however, after January 2007 when Michael began receiving SSI benefits and his case was closed. It is at this critical juncture where I depart from the majority's analysis and dissent with their interpretation and application of these and other applicable laws.

Pursuant to state regulations, "[f]or budgetary purposes, the number of persons in the public assistance household are those persons who the applicant, recipient or a representative indicates wish to receive public assistance and who reside together in the same dwelling unit" (18 NYCRR 352.30 [a]). However, "children and adults residing with an SSI beneficiary

must be considered a separate household from the SSI beneficiary with whom they live" (18 NYCRR 352.2 [b]). Someone receiving federal SSI payments "shall not be eligible for safety net assistance" (Social Services Law § 158 [2]). "Parents and siblings who are SSI recipients" and others who are ineligible for public assistance "are not required to apply [for public assistance] in accordance with [18 NYCRR 352.30 (a)]" (18 NYCRR 352.30 [a]).

Notwithstanding these statutes and regulations, the majority agrees with respondents' determination that petitioner's assignment of child support payments to them did not expire when Michael's case closed, because petitioner's assignment of rights to Michael's child support is permanent, lasting for the duration of the family's case, regardless of whether Michael's case closed sooner. Phrased differently, HRA argues that the assignment extends not just to current support payments collected while Michael received public assistance, but continued while the rest of the household he was once a part of received public assistance.

Respondents rely on the assignment of support language found in Social Services Law § 158 (5) and 18 NYCRR 347.13 (f), the latter of which provides that "[w]hen a family ceases receiving [public assistance], the assignment of support rights terminates, except with respect to the amount of any unpaid support obligation that has accrued under such assignment." According to respondents, "family" means all the members of the petitioner's family, even though statutorily Michael was a separate "household" once he began receiving SSI. Although the majority points out that no excess support payment is presently owed to petitioner because HRA's payments "to petitioner and her family" exceeded the amount of child support collected when Michael's case closed, HRA's desk review, which is a final reconciliation, does not accurately reflect that once it recoups the child support attributable to Michael's support while he was statutorily considered a part of that household, any excess is due to petitioner.

Although petitioner and her younger son, J.S., continued to receive public assistance after Michael became eligible for SSI, and although petitioner reapplied for public assistance in June 2009, HRA notified her in June 2009 that the benefits it had approved were only for her and J.S. There is no indication that petitioner received SNA benefits on Michael's behalf after June 2009. In fact, although petitioner and both children were found qualified for and received food stamps, HRA specifically denied Michael benefits on the basis that his "SSI payment amount

exceeds the individual's budget," referencing 18 NYCRR 352.1 and 352.29 (b), the latter of which pertains to budget deficits.

The payment worksheets that respondents relied upon in performing their desk reviews and in support of their determination are uninformative and inconclusive, in large part because they do not differentiate between the benefits paid to the family when Michael was a part of petitioner's household and receiving public assistance and subsequently when he became his own separate household and his case was closed. According to respondents, petitioner and J.S. received benefits totaling $10,704.42 between June 2009 and August 2011 and that sum is included in respondents' computation of unreimbursed public assistance. Although there was a brief two month period in 2009 when Michael apparently either lost or had his SSI benefits reduced and respondents provided him with temporary public assistance, Michael was a separate household from his mother and brother's household once he began receiving SSI. The benefits paid to petitioner's family are lumped together and the family treated as a single household unit for the entire period of time under review encompassing 1989 to 2011. The worksheet also does not appear to credit petitioner for the sum of $1,588.20 that HRA recovered from petitioner's initial SSI check when she qualified for her own SSI benefits effective December 2011, retroactive to September 2010.

Respondents' findings are arbitrary and capricious and erroneous as a matter of law to the extent that they seek to retain child support paid for an SSI recipient whose needs were not included in the public assistance grant once his cased closed in January 2007 (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Upon examination of the applicable laws and regulations, it is evident that the term "family" as used in part 347 of the Department of Social Services Regulations has to mean the child or children for whom there is a support order allowing HRA to collect the child support that otherwise would have gone to the custodial parent who has assigned his or her rights to receive such support directly. Otherwise reference to "paternity" and "enforcement of child support" in this regulation would be meaningless. The terms "family" and "families" are also used throughout Social Services Law § 131 in connection with eligibility for benefits based upon the size of the family.

Respondents' determination, that they are entitled to all of the outstanding child support and that petitioner's assignment of child support is permanent, lasting for the duration of the

family's public assistance case, even for a period of time when Michael was not a part of that household, is without a rational basis and their interpretation of the applicable laws and regulations is inconsistent with their mandate that once a recipient qualifies for SSI, that person is ineligible for public assistance. Since HRA's calculation of the recoupment amounts it is due included monies paid to petitioner's household at a time when Michael was not a recipient of benefits, I would remand this matter for a recalculation of the unreimbursed assistance amount so as to involve only the period of time Michael received public assistance as part of petitioner's household (*Matter of Police Benevolent Assn. of N.Y. State Troopers v Vacco*, 253 AD2d 920, 921 [3d Dept 1998] ["We unquestionably have the right under CPLR 7806 to remit a matter to an administrative agency when further agency action is necessary to cure deficiencies in the record"], *lv denied* 92 NY2d 818 [1998]; *see also Gersten v 56 7th Ave. LLC*, 88 AD3d 189, 204 [1st Dept 2011] ["remand may be appropriate where the agency has made the type of substantial error that constitutes an 'irregularity in vital matters' "]).